Before we begin today, we'll notice that we're missing one of our justices, Justice Barberos, today. I should have said this before the other cases. Due to a scheduling conflict, he's unable to be here for the oral arguments personally, but he is a full participating member. On your case, you'll have the benefits of the oral arguments, as well as has had the benefits of the arguments in the written brief, for the record. I just want that to be stated. Okay? Would the clerk please call the next case? 419-1593 L.C., American Kitchen Delights, Inc v. Jonathan Lowell. Thank you. Counsel may proceed. May it please the Court? We're here on... Could you, for the record, for the recording, state your name, please? Dennis Booth for American Kitchen. Thank you. We're here on appeal from the 4D hearing at the commission where they found that American Kitchen knowingly failed to have insurance. While that statute says that the commission will make this decision with due process, it does not say what process is due, nor does it define the standard of the evidence. And given that 4D acts as the gatekeeper to significant consequences to a business, if it is found to have intentionally failed to have insurance, we believe that due process requires a heightened statute, a heightened standard of care. If you have no cases that say that, and obviously I think we can all agree the act is silent on the standard of proof, how do you respond to the argument that in civil cases generally, and the case law is replete that in the absence of something specific in the act, civil law would apply, and it's generally a preponderance of the evidence. So on what basis would we reach out and create a higher standard than would normally apply interpreting the act? Well, because due process concept requires that there be a balancing. I didn't cite the Matthews v. Eldridge case, but that case contains a discussion. When statutes are silent, and it's the same discussion that I've raised, you have to look and see what is the private interest that is at risk, and what is the risk if you use simply a preponderance. And what's at risk here is not only is the corporation, but its owners and officers are subject to a felony prosecution, immediate closure, and authorization that it can be sued where negligence is presumed. Those are significant.  Let's take those one at a time. In this case, isn't there a procedure with due process clearly built into the statute and didn't it take place here? Wasn't the Respondent sent notice of the hearing? Wasn't, didn't you file a motion, and didn't the Respondent appear and participate in the hearing? So tell us why that is not due process. Because that doesn't answer the entire question. That doesn't stop short. Because due process, you also have to consider the standard of proof. It says, in a criminal case, due process requires that it's beyond a reasonable doubt. And as I cite in my brief, in numerous civil cases, the clear and convincing standard is used, even though those statutes were silent. In attorney disciplinary cases, an attorney can't lose his license except upon clear and convincing evidence. And the case that I cite says, because you could lose your professional reputation and your professional livelihood. Well, a lawyer's livelihood is no more important than any other business's. And my client is subject to loss of its livelihood and reputation because it can be prosecuted here. So how do you square that? Wait a minute. If it is prosecuted, now they've got to prove it beyond a reasonable doubt. This only required proof by preponderance of the evidence vis-a-vis you did not have or knowingly did not have workers' compensation insurance, and therefore you are no longer entitled to the benefits of the workers' compensation act. But if any of your officers are prosecuted either for the class 4 felony or the class A misdemeanor, proof will have to be beyond a reasonable doubt to get you due process for assuming someone indicts you or files a complaint. But, again, that's not enough. Why not? Because, again the finding in this case does not establish your guilt in a felony prosecution. As I know, I believe this is similar to an immunity. Your immunity is not simply from prosecution. It is from being put to jeopardy. This act protects us from being put into that jeopardy and set aside the criminal aspects. You also have the aspect that it authorizes a civil suit where the negligence doesn't have to be proven. They start with a presumption that you were negligent. You've got to prove otherwise. And so they get that benefit because of a knowing finding. They get a presumption. So as soon as you introduce evidence contrary to the presumption, the presumption falls, and they still have to prove their case. In this particular case, you are not you have not become subject to the class 4 felony because of their finding. You become subject to class 4 felony if you're indicted for failure, knowingly failing to provide the coverage. That's not a potential to happen if the standard is raised because that gives us the additional protection, because instead of my. I just don't understand what you just said. Try that one again. What I'm trying to say is the fact that there was a knowing finding puts us at risk to be indicted. Without that finding, you're not at that risk. The statute is the gate. Why? If no for. It's not a knowing finding. Hold on. If no 4A hearing was ever held, 4D finding was ever held, does that stop the State's attorney from accounting for indicting your client for knowingly failing to obtain workers' compensation if he felt like it? No. He can do it. He doesn't need permission of the Workers' Compensation Commission to indict your client. Well, I think that there has to be the pre-finding of knowing before that could happen. No. He's got to prove knowing when he indicts him. That's his proof. It's right. And he would get – your client would get due process coming to anyone who's charged with a criminal offense. Proof beyond a reasonable doubt. Here's the other problem I'm having with your argument. I understand your argument about fairness. But as you know, I think we can all agree that the purpose of the Act is remedial to protect the injured worker. So now what your argument is, you've got an injured worker who's already hindered in obtaining prompt and equitable compensation when the business doesn't have comp insurance, okay? So now you're going to throw another hurdle in his way. So to me, you might just encourage business to say, heck, I'm not going to have workers' comp insurance intentionally because with all these hurdles, they may never be able to prove it. So why would I ever bother to have comp insurance? And how do you answer that question? Well, first of all, this provision of the Act is not remedial. It is punitive. So it's different than the rest of it, the balance to get the injured worker something paid and can't. Yeah, but why is it punitive? It's punitive to encourage prompt compliance with the underlying purpose of the Act, which is equitable and remedial. That's the point of making it, in a sense, punitive, so that the Act can be enforced as it's supposed to be. The fact is, it is punitive. And because of those consequences, proof by 50.0001, as opposed to in clear and convincing a substantial belief of something, is a better protection than merely the preponderance. But when you raise the facts here, the facts are my client, for 32 years, went insured. He began the renewal process in September of the year. Loss runs, meeting with the broker, employment projections, sales projections, and the broker shop's prices. All of the insurance that he had, general liability, comp, auto, and excess, are in lockstep. They're renewed at the same time. All got canceled, and then all were renewed, and the cancellations were rescinded, except the worker's comp. And my client testified, and there's no contrary testimony, he didn't realize when he got the through. Well, we're assuming that he didn't get the notices, but clearly the testimony was it was sent out. Your client denied ever seeing it, but there was no evidence to impugn the fact that it was sent out to him, as it was in previous years. He says he never got it, right? He says he didn't see it. Okay. Yeah. But, again, the concept is between intentional and inadvertent, if they came in and he didn't see it. It's actually knowing. I don't know that it has to be knowing. Well, because it's synonymous. No, it's not. Intentional. No, knowingly failing. Okay. I'm not sure that we can impose intentionality on that concept. Well, if you, then the words aren't defined, and in common usage, if someone did something knowingly, they did it as planned, as intended, those words are used interchangeably. And certainly knowingly and inadvertent, oops, a mistake, are completely different concepts. Those are, but I think we should stay with the statutory language of knowingly fail. Well, again, okay, to know, there's no evidence that my client knew or realized that when the rescissions of the cancellations came in, the one policy did not rescind. And he testified the bill doesn't come until March, after the year ends, the bill comes in March, which is after the date that the petition is filed. So his first notice is when he receives the petition after it's filed at the commission. And how long after that did he actually get the insurance? It was until the middle of, as of the June 1st hearing, he still didn't have workers' compensation for institution. He did not. And as I know. So he wasn't really concerned about this at all, was he? Well, that's not correct, and that's not a fair assumption. Why is that? Because he testified it's a four-month process. It begins in September for renewals at the end of the year. So if he didn't have notice of this until April, and by two months later, June, he hadn't had new insurance, there's no evidence that the four months isn't accurate. He's only two months into a four-month process. Excuse me. Did I miss something? When he found out, as of April, you've acknowledged, because he was contacted by the insurance company. He knew there was a claim pending. He's admitted that April 12th, Respondent's attorney, I don't know if that was you or somebody else, confirmed by e-mail that he didn't have it. Why didn't he just pick up the phone on something that's important and ask directly, where's my comp insurance? He says, oh, I want to wait until I get official confirmation. Does he sound like somebody who's concerned about having comp insurance? Absolutely. Because, first of all, he doesn't have to take the Petitioner's word for it. When the Petitioner says, hey, I didn't find that you had insurance, he thought that he had insurance. What did he do? He did pick up the phone. He contacted the broker to get confirmation that that is correct. And then once he was confirmed in not taking the Petitioner's word for it, the broker couldn't tell him whether or not he had comp insurance? And as he testified, he said, I wanted it in writing to know whether this was our mistake or my broker's error. And he asked for written confirmation. He got written confirmation, which I believe he said was made. The broker would have taken six months to give it to him. He just goes on his way and doesn't worry about it, right? Well, that hasn't happened in this case. That's speculation. Okay, so let's get back to the real facts here. Okay. April is when he's made aware of, whether he thinks it's credible or not, that he doesn't have what was comp from opposing counsel, correct? Correct. Okay. And the history of this man's business was he bought bundled policy coverage, and he started in September of the prior year negotiating or having the broker shop this package coverage. Correct. And then apparently he was denied it, but then it was reinstated. These denials were rescinded. Is that correct? As to the other coverages in the package. That's correct. But apparently he got no rescission on the denial of workers' comp. Is that correct? That's correct. Okay. And your argument is he was unknowing about that non-coverage until he got first notice from opposing counsel and then attempted to verify whether that was true, that he didn't have comp coverage by contacting his broker. Is that correct? That's correct. Okay. And what time frame elapsed between that, not that it may be really relevant? To when he was unnoticed by opposing counsel that there was apparently no coverage. He got written confirmation in May, and the broker was instructed. From the broker he got written confirmation? From the FCCI, the company itself. Okay. The company, yeah, that the broker placed his business with. Correct. And he got. Written confirmation that they had not renewed came in May, And then the process was begun anew. New loss runs, new employment projections, salaries, sales projections. All of the criteria to establish coverage and make the quote as the appropriate quote for that coverage, for that business. That's what the broker asked for in order to shop coverage. Correct. That's what has to be done. Apparently, yeah. Well, it has to be. With a risk policy. A risk. I have some experience with that. Okay. You have to assess risk and set an appropriate premium. It's based on loss. It's based on exposure, wage exposure, et cetera. A lot of factors go into that. And so the shopping process. So there was no question that he could have obtained. No question he could have obtained an emergency bridge coverage for what might be an outrageous premium. But nonetheless, Lloyd's of London will ensure the sunrise setting tonight. Okay. They'll charge a lot for that. I know nothing about Lloyd's of London. There was no evidence of this, as you just described, in this record. There was no discussion about whether or not that was available. What is in the record is that. The time frame of the time frame when there was no coverage is established in the record. Yeah. That's the total time period. It's not in the record of when the new policy was put in place. No. No. But we do have an established time when there was knowing noncoverage, right? Yes. Yes. After the fact. Okay. Right. And that's one of the issues as well. Well, again, that's after the fact if you believe that he never got the notice. The commission doesn't have to accept it. Well, I know that the commission makes no findings on credibility. They don't say we infer. They just say, based on this evidence, this is our finding. There's no discussion that says we don't believe that. And while inferences are certainly allowed, they have to be reasonable inferences. And when someone testifies and the only evidence is I thought I had the insurance, it is not a reasonable inference to conclude the opposite must be true based on no evidence. Let me just ask you a question. May I? I'm sorry. Yeah, go ahead. The commission, I'm just going to read to you from the commission's decision. And what they do is they quote and they say, I assume we had the insurance policy because all the policies were canceled and then they were reinstated. There is an assumption. Aren't we sort of burden shifting? The claim or the employer under the Act bears the burden of having the policy. He bears the burden under the Act of having insurance, but he doesn't bear the burden of proof as between knowing and intentional. No, that's not my point. My point is that there's noncompliance and there's an assumption. There's an assumption made, I have this insurance. I did everything that I ordinarily do and I got all my other insurance policies and I assume these all came in together. That's an assumption. If he's wrong, that's not intent. That's neglect. That's a mistake. Why don't you say that's not knowingly failed? Correct. Let's keep that. Those words were chosen for intention. Look, intention could have been put in the statute. But they chose the words knowingly failed. And that's what we have to deal with. So let's not analogize it. It's knowingly failed. And he didn't know. And you can't just say he testifies black. The commission can't say, well, there's no other evidence. But we're just going to infer. Let me ask this very simple question to you and tell me if it's wrong. The commission noted that as early as October 30th, 2017, well before the accident, ECCI notified Respondent regarding the non-renewal of the workers' compensation policy effective as of December 31st, 2017, before the accident happened. Is that not true? The commission noted that. Correct. He said he never got it. But that doesn't mean I've got to believe him. Consistent with the fact that he started the process in September. It doesn't matter. Well, it does, because that shows that the intention, his actions in going through the process of renewal, there's no evidence that that was a sham, that he went through all this. So that carries today. He knows the policy definitively is going to expire at the end of 2017. And his response is, I don't need comp insurance under the law because I'm in the process of trying to obtain it. Is that what you're telling us? No. The fact is, he's in the process of trying to obtain it because it's going to end at the end of the year, and it takes him four months, and he's going through the process and believes he got that rescission, which is the same rescission he got for his auto, his general liability, that those all got rescinded except this one. So in essence, it's lost in the shuffle that he didn't know that that was not rescinded. So that's neglect. He didn't carefully read the rescission notices. That is not a knowing lack of insurance. And I also want to note that the cancellation was based on loss rates. So why? It's not rational to exclude this policy when it's based on all the losses that they had. Why not skip general liability, which they got? So apparently there wasn't a loss problem there. The one statute that has these penalties attached, the commission wants to infer that that was a knowing in the face of all these consequences, refusal to not renew that makes no sense. If you were going to not renew something, it would be the one that has no penalty attached to it. Excess liability, general liability. So your answer again, I'm trying to grasp fairly the summary of your argument is even if he gets by the hurdle of he never got a notice, which clearly the commission doesn't buy that argument, you can't dispute that as of April 2018, he knew he didn't have it. Okay? Is counsel for the company lying to him when he tells him he doesn't have it? Is that a fair inference to make? And your answer is, well, he's in the process. So what? He's in the process. It doesn't matter if he doesn't have it. He's in the process. Okay. I understand your argument. Kennedy. Well, I'm going to ask this question to kind of get us back on this knowingly trail. We have a concept in the law called strict liability. We're all pretty familiar with that. It doesn't require mens rea. However you want to describe that. Okay? Is this statute, which says knowingly fail with consequences that are found to be knowing failure. Okay? Are we in danger of making this strict liability? Well, if based on. I mean, obviously the language put in there would seem to me that all you'd have to is at this time there was no coverage. And then all penalties would fall. Well, then the portion of the statute that says you've got to decide between neglect or knowledge disappears. And in essence, it disappeared here because there's no evidence of that knowledge in this record. It's unrebutted. I think we go down the wrong track because I think it's too simple for us to say this is strict liability when it's not. Well, the issue isn't just that you didn't have it. It's beyond that. But that's really all that's in the record is you didn't have it. And I don't think it's relevant what happened after you found out that you didn't have it. It's what led up to you not having it. Well, let me say one thing. I agree with you completely, as well as Justice Sotomayor. This can't be strict liability because you have a mental state of knowing. So it cannot be strict liability. However, hopefully we can all also agree is when any statute, when you have a mental state, you can't ascertain that directly. It has to be inferred from the surrounding circumstances. That's what was going on here. But it's not the employer's burden of proof. And if they don't prove their case, the employer has to prove nothing. And in this case, they didn't prove knowing. And the facts are undisputed. There are no reasonable inferences to reach a conclusion that is 180 degrees opposite of the testimony. I agree with that. How are you going to prove knowing if your client sat on their hands and assumed it, and after 32 years of being insured, the date comes up and you've not confirmed that you're insured? Well, you want me to make their case? How about they could have called the broker to find out what the broker had done, when the process really had begun. I'm looking at it from the perspective of yearly, I've got to register, all of us have to register with the bar, the state. And if that date comes and goes and I'm not registered, by God, if I want to be in the practice of law, I check it out. And there's a finding by the commission that there's a quote, assumed I was good to go. I'm going to sit on my hands, don't have to do anything. It's an assumption. You assumed that you had. Insured, yeah. But in your case, you didn't do anything. You didn't begin a renewal process, because all you have to do is write a check. You don't have to give them a list of your cases and what you project your income is in the coming year. My client went through all of these processes. That's not somebody who knowingly has no insurance. That's somebody who began the process, went through the trouble of doing it, and by making an assumption that is erroneous, that's not knowledge. That's an error. It's not an error. It doesn't just come down to a fact question, does it, for the commission to decide as a matter of fact whether he knowingly didn't get it? Isn't that a fact question? Because the – it's a factual question. But the facts are not in dispute. So the meaning of those facts is a question of law. The only thing that's here – there's one witness. He didn't give conflicting testimony. They didn't call anybody else. So the facts from my client are the only facts in here. And what were those facts? Thirty-two years of insurance. Began the renewal process in September. Gave loss runs, employment projections, sales projections. Sent the broker out to shop prices. All his insurance was placed with one company. All policies ran for the same term. All got cancellation notices. All got rescissions of the cancellation except for the workers' comp policy. And the first realization that the comp hadn't renewed was upon receipt of the petition by Mr. Galinda. And thereafter, once he found that out, got written confirmation to make sure that what the petitioner was saying was, in fact, correct from his broker, and then began the process again. Didn't he testify that he couldn't recall whether he ever received a notice of cancellation? He says he didn't know if he saw that. I'm only the president of the company. I don't even see the mail. So if he can't recall whether he saw a notice of cancellation, and he identifies the notice of cancellation as being authentic, and it carries a cancellation date of December 31, 2017, and says that it was mailed on October 30, 2017, have they made the showing that there was, in fact, a cancellation, and your client has not introduced evidence that he was unaware of it? He only says I can't recall. No, because, again, all the policies, standard operating procedure, get canceled, and you have to take the affirmative steps to renew them. So he was taking those steps. The cancellations came in. The cancellations were rescinded except for the one that brings us here. But the fact that that one didn't come, you see the others and make the assumption that they all renewed is neglect, not intent. Kennedy. Let me see where we are in time. Gosh, I let you go way over. That's okay. You will have time in reply. Thank you. Okay.  Thank you. Counsel, you may respond. Try to be equal here. Good morning, Your Honors. Eric Witter. I represent Jonathan Kalindo, the appellee in this matter. First, a couple points that I'd like to bring up. Counsel has repeated several times in his brief indicates that the facts are not in dispute. That is not entirely accurate. One of the inaccuracies in Counsel's brief is that he didn't have a confirmation of any insurance issue until these rescissions were sent out in May. It's contradicted, and this is what the commission looked at, by his own testimony that he spoke with me on March 12th early regarding this issue. Now, did he affirmatively confirm in that conversation, no, I don't have insurance? No. He was asked multiple times about insurance and did not give an answer with regards to that. His attorney at the time did confirm, as you see on the April 12th email, there is no insurance. It wasn't an issue in that email. Like, there is, I don't think there's insurance. I have to hear back from the brokers or the insurance company regarding any rescission notices. He doesn't deny that. In fairness, he doesn't deny that, but he's saying, look, I knew it, but we're in the process. This takes a long time to get. This takes months. I think his argument was that we begun the process not until May when he had this final confirmation. Now, the statute indicates that not having workers' compensation insurance is an immediate and serious danger to the health, safety, and welfare. Now, when somebody lets you know, when you get a workers' compensation claim that comes through, now, this actually would have happened. It was filed in the beginning of February. Within several days after that, he would have had a copy of that. That's when you send it on to your carrier, and then your carrier would presumably let you know, hey, look, there's no coverage here. And typically, carriers do not like to pay for things for an extended period of time, especially defense. They'll let you know right away whether you have coverage. Again, it was finally confirmed by an email in April. You don't need to wait, again, until May for any written confirmation. You need to be to protect the public and your employees. He didn't just employ Jonathan Galindo. This is a big food manufacturing place. There's many other employees that are at risk here by his lack of concern to have workers' compensation insurance. You get on the phone right away, and you find out how to get coverage. As Your Honor indicated, you may have to pay a little more for some immediate coverage. But this isn't a four-month process. Well, can I ask you a question? Assuming that he knew, as of the first phone call that you made, that he didn't have insurance, of what relevance is that? The question is, did he have insurance on the date that your client was injured? That's the only relevant thing vis-a-vis your client. I would go a little further. The question is whether he knowingly didn't have insurance on that such date. That's interesting. The commission found that, looking at the totality of his testimony and all of the facts, that his testimony wasn't credible, that he wasn't sure or wasn't knowing. Okay. The real relevance is, when did your client get injured? When? February 2nd of 2018. February 2nd. So the real question is, at the time of the injury of your client, was the respondent knowingly failing to have coverage? And the commission held that. And the commission is the one that is charged. Well, we know all that. Yeah, yeah. We know the law on that. Now, what were the facts that they credited, that they had before them, that would establish, you're arguing, that established by the manifest weight of the evidence, that on that date of injury, the respondent knowingly failed to have coverage? As you indicated, you infer from the surrounding, all these circumstances here. You look at everything. Only, yeah, let's look only at the facts that go up to the day of injury. The Petitioner, Jonathan Galindo, cannot look into the mind of the President of American Kitchen. Well, we know that. I mean, come on. The only way we can determine whether this is knowing or not is to look at all the surrounding facts. Well, that's what my question just was. What are those surrounding facts up to the time of your client's injury? As of one of the things that I thought was particularly damning is the President testified that as of the date of the hearing, what we refer to as the Keating hearing before the Commission, he still didn't have insurance. I think you're missing his answer. You're not responding to it in all due respect. But Justice Hoffman gave you the answer very succinctly to everyone here. The Commission noted that as of October 30th, the Respondent was notified, the company was notified of the non-renewal effective December 31st, 2017, well before the accident to answer his question. So that's before. He wants to know what happened before the accident that was a knowing refusal to obtain it. As Justice Hoffman pointed out, Hassan testified he could not receive he does not recall receiving the non-renewal notice, but identified that it went out. That's the relevant and critical factor. That's not disputed. Okay? He confirmed the address was correct on the notice in his testimony. Right. So we don't need to go into what happened after the accident. He said I would. Yeah, let's go simply. He said I'm not aware of being canceled, having no insurance on that date. I mean, that's what I think his testimony went to, didn't it? That's what his testimony is. Okay. Yeah. I'm not weighing it. I'm just asking. That was in the record. That was his statement. That was his statement. Okay. I mean, we all have to concede. I think probably I'll go out so far as to say if he would have not found out anything at all until somebody called him after the accident, that would put this case in a completely different posture. But you have the notice going out as the commission found. It was sent to him. He said he did not recall receiving it. I don't think he ever testified. The company never got the notice. No, he did not testify to that. Okay. So that's what's going to carry the day for you there. There was a comment there and a question. I think there was a suggestion with regards to the buck stopping with him. He's boss. That's sufficient evidence, I believe, by the commission to attach a fine. I would believe that. I would agree. I think that is sufficient. Okay. So what we have here is this cancellation that went back in October, which is pro forma, required by law. Correct. You've got to give notice. And they canceled the whole combined coverage for this company. Correct. Okay. Then his argument is that cancellation was rescinded and insurance was reinstated. And apparently the coverage under Workman's Comp factually was not reinstated. So what isn't it more relevant what he knew as of January 1, 20 or whatever, 18? Okay. Isn't that really what is the time frame to look at to establish knowing? Well, what's in the record is. Knowing failure. Yeah. Correct. As of the time of the hearing in June of 2018, he did testify that they didn't have insurance. That's what's in the record. Oh, at the time of the hearing, that they didn't have insurance when? That they didn't have insurance on February 2, 2018. Okay. Okay. I understand what you're saying. That is the date that's relevant here. That's what starts this whole chain, is my client getting injured on February 2. Yeah, but he didn't have insurance. Now, the real issue is, did he knowingly fail to have insurance on that date? Right. Was this an inadvertent mistake, like, oh, jeez, like I forgot, I can't believe I did that, or was it a knowing decision by? An economic decision, perhaps, whatever the decision. Honestly, I don't want to surmise on why he would make the decision. I don't know. Well, you don't want to surmise, but I'm looking at the record, because there's got to be some support in the record for a commission to make a knowing failure finding. And I think where that is found by the commission is the fact that still at the hearing in June, he doesn't have it. His attitude, the commission is there actually, the commissioner is actually there having the witness before them, okay? His attitude, the commission can find his attitude, even though he may be saying what could be the right things, the way he's saying it, which are not always apparent with regards to just reading the transcript, that's why the commission is given such substantial deference in determining whether this is a knowing or a mistaken or a failure to have the coverage. Well, let me put it this way. They can't go and see an astrologist or a seance to determine what's in the mental state of this man who's testifying that, as of February, I was not knowingly failing to have insurance. Correct. So we can talk about that after the date, what may or may not take place by this person, but now we're going into motive more than anything, than in knowledge. If someone's facing the criminal penalties that counsel has indicated that are so dire to American kitchen delights, typically that should kind of light a fire under you to do something. But wouldn't it also explain, oh, that would be for subsequent actions, but what subsequent actions have to do with it? We're right at this point in February on the date of the accident. Did he knowingly fail to have it? Because the purpose of the statute isn't to just protect Jonathan Galindo, okay? That's why I'm here before you, Jonathan Galindo is my client, but the purpose of this statute is to protect the public health and safety and welfare. This is not an attorney general action. This is an action that you're representing a client on. And this language of the purpose of the statute is oratorical. But for your concern, is my client able, if entitled to compensation, is my client able to be compensated by the respondent? That's where my focus is, and I may be wrong, but I think we're out here as an attorney general type action for the great state of Illinois. Why I bring this up, and I agree with you, why I bring that up is the commission, when determining whether something is knowing, obviously you're looking at everything else, and when the commission is keenly aware of the purpose of the act and the purpose of Section 4D of the act, I want to ask, what are the facts that went to the relevant issue of knowing failure on February to not have coverage, compensation coverage? I ask opposing counsel, what do you see as the facts, as an explanation, so to speak? Postcard that was mailed out, that is not denied. Secondly, the fact that he still didn't have coverage later June. No, no, I want to leave that one alone. I want to know what were the facts that the commission, I think, properly should have been focusing on as of that date, when your client was injured, that there was a knowing failure to have coverage. So where's this postcard? When was it sent out? It was sent out in October. Okay. 2017. And that was explained by the President, I think, was it not, maybe not, that there was in the record, that's a knowing pro forma, not knowing, that's a pro forma process for all insurance. Correct. Okay. So, okay. What he knew is, if anything, the reasonable inference is, that postcard said as of January 1, you will not have coverage. That's all that could be taken for. What's the next piece of evidence? Well, I, you know, in that time frame, I'm, we do, we know in that time frame he got a card, noticed a cancellation as of January 1. There's really, there's no other written evidence or testimony. Was there any testimony by the employer that negotiations had become with the broker to obtain coverage and all of the things opposing counsel presented to this court in the appellant's argument? Was that known? There's no evidence in that time frame. There's not, there's no other evidence in the time frame prior to the expiration of this policy on December 31, 2017. So. As it relates to your client, the only thing that this order does is give you the choice as to whether you want to sue them civilly or you want to continue to press forward on a claim before the commission. All it does for your client. Other than, in fact, there is a presumption if you sue them civilly of negligence. Of course, they get to defend it and say we warrant it. So all this business about the attorney general and what happened in June and what happened in May and everything is really irrelevant to the issue as it relates to your client. I genuinely and I don't think my client cares whether the president or American Kitchen and Lice has ever had a repossession case. And I'm sure he does. All he cares about is being cared for and getting the benefits of the Workers' Compensation Act, whether that's through the administrative process under Workers' Compensation or in a civil court. And that gives him. All he wants is to be kept. And the only thing that you get out of this decision is a choice. You get to pick and choose. Correct. And the only thing that's relevant to that is was there or was there not. Did they knowingly fail to have workers' compensation insurance on February the 8th of whatever year? Correct. And was that finding of knowing failure against the manifest way of the evidence? Yeah. I do not think that is against the manifest way of the evidence. If I look at just the evidence up to that date of February and you're saying it's just the postcard. What's the postcard? You're saying I don't remember. It's the postcard. He didn't say I didn't guess. He did not say. If he had said I didn't get it, that's a different issue. He said I don't remember getting it and, oh, by the way, I don't always look at the mail. So and the question is, it's not him, it's the company. Did the company knowingly fail? Did anyone else know this cancellation notice was there? He only testified, I don't remember I, me seeing it. Correct. No, he said he's not the one that opens the mail. At least that's what's in the opinion. That is correct. It says Hanson could not recall receiving the cancellation notice. He testified that although he was the president and ran the company, he did not handle all aspects of the company such as receiving the mail. Mr. Witter also indicated something to the effect of knowing the expiration date. There's evidence in the record of 32 years. I don't know how much the record supported the idea that there was a knowing or it was known the actual date of cancellation, but I think that's also something that potentially is in the record. It would suggest, knowing it's time to react, is that an argument you're making? Because you made me allude to the cancellation. Well, I mean, he testified that he's never gone without insurance and that's his testimony. I argue in my brief that testimony is not exactly facts and the commission is the one in the position to weigh his testimony, whether they believe it or not. If I'm facing something like this, I feel like I have to ask. I shouldn't ask questions, but I'm a little bit ignorant on an issue. Assuming the commission were to find that he didn't knowingly fail to have insurance but he didn't have any, what's the remedy of your claim? There's, yeah, there's. Goes to the fund. Goes to the fund. That's exactly what it is. Would go to the fund. That's his only remedy. And then to the detriment of your client, as I understand it, it's like a pro rata benefit program. I mean, in other words. I've only read about that. I actually haven't heard of it. That's just what I heard. Maybe opposing counsel can explain to us what that happens, but my understanding is that fund is not unlimited. It's not taxpayer funded. My understanding is funded by penalties, et cetera, the pot of money. And then at the end of a year, whatever the benefits are paid out in some pro rata form for the workers who are Right. To be honest, I don't know all the specifics of what that fund and where the money, where the pot comes from. That's my understanding. I can certainly stand to be corrected because it's something we don't get into, but it's an interesting background question. And so I'll just add to you. I don't think there's a heck of a lot more that I can add orally right now than what is in the briefs and what has been discussed before you. I would ask that you rule the court of what the commission's decision in the lower court says. So thank you very much for your time. Okay. Thank you, counsel. Counsel, you may reply. At the risk of repeating myself, mere fact that a petitioner's attorney contacted the company and said, hey, I don't think you have insurance. I don't believe that anybody's bound to accept that. And I don't think you can then attribute some bad motive to the fact that at that point, the door opened and an investigation into the accuracy of that statement began. Wait a minute. We know we didn't have insurance. There's no question about that. The only question is, did he know it? When did he know it? So what does this don't you ever have to accept the lawyer's statement he didn't have insurance? He didn't have it. We know that. Right. He didn't have it. But again, the focus of this decision, their findings are on all the after the fact. We know that. But now we're asking what is in the record that on that date in February, he was of the knowledge he had no coverage. And there's nothing in the record. Oh, there is. There's a cancellation that was mailed out in October. And his statement saying, I don't know if I got it. His testimony is that he, all of the insurance canceled, all of the cancellations were rescinded, except this one. He thought they were all rescinded and he had insurance and went on about his business. Did the commission hear that testimony? That's the testimony that was presented. Did they have to believe it? They could believe he got the notice and he didn't. He just ignored it. Well, if you want to disbelieve somebody, you have to have something in the record to form the basis. You can't just manufacture it from whole cloth and say, well, even though there's nothing impeaching him, even though there's nothing contradictory, we accept nothing that was presented to us. And once again, that would be an inference. It has to be a reasonable inference based on these facts. That's not reasonable. But it was not our burden. When you look at this decision, it says none of the respondents' explanations offer any justification for failure. Well, that's not the point of the hearing. And that appears to put the burden on us to explain or justify why we didn't have it. It wasn't our burden. He could have, he had lots of options. Why not use the subpoena power and subpoena the insurance company? Find out what was said. Subpoena somebody else as a witness, not just rely on the owners. We should make a decision that if a notice is clearly and undisputedly sent out to a company, as long as the president or the person who runs the company says, I never got it, that's it. That's the ballgame. It's far more than that. Because he explained, he had already begun the process of renewal. Of course he knew that it was going to terminate at the end of the year. That's why he was going through the process and believed that based on his efforts and past practice with his broker, when he got these other notices, he had the insurance. The question is he didn't really care because, and I don't agree that what happens after the fact doesn't bear on knowledge and surrounding circumstances, that once, as Justice Hoffman pointed out, clearly when the attorney called him, he knew then by his own admission he didn't have it, and then instead of picking up the phone and acting with a sense of urgency, he just ignores it and goes on his way until he finds out months later that he's got it. They can infer he really didn't care about getting this insurance promptly. Well, they may be able to infer that at that point in time he didn't care about doing it promptly, but that's irrelevant to whether he knew that it was canceled at the end of the year and he didn't have it on the date that Galindo. Why is his mental state and his attitude before and after not relevant? Because it's not relevant to, it doesn't prove or disprove why he didn't have it in the first place. That in and of itself does not prove whether he had it on the date of the accident. Right. But it's relevant as to a knowledge from a totality of the circumstances consideration. Maybe if there had been evidence as to what his options were at that point other than beginning the four-month process anew, maybe if there was something in the record to suggest, oh, all you have to do is pick up the phone and you could have gotten, but there's no discussion of that. Well, why would the claimant have to provide that? Well, if you're going to rely upon these. He could have called in a carrier and got a policy. Well, if he could have done that, it wouldn't take four months. And he said he began the process anew once he was confirmed that this wasn't an error, it wasn't a mistake, that in fact they didn't have it. He began the process all over again. Is the mailing of a document properly addressed to the recipient at the recipient's proper address evidence of receipt? It's evidence of mailing. Is it evidence of receipt? I don't believe it's evidence of receipt. So if you mail something to someone at their address, properly address it, postage prepaid, that is only evidence of mailing. It is not evidence. It's no evidence whatsoever of receipt. Because if it's evidence of receipt, the burden shifts to you to prove no receipt, and you didn't prove it. It's all you said is I don't know if I got it. And remember, we're not talking about Mr. What's-his-name, Hassan? Hassan. We're talking about a corporation by the name of American Kitchen Delights, Incorporated. The question is not whether Mr. Hassan got it. The question is, the overriding question is whether the corporation got it. And he turns around and says, I don't even receive the mail. He never denied that the company got it. Did he ever say, absolutely, my company never got this notice? Did you testify to that? No. So I'm back to my question. He admits the notice, and admits the notice was sent. I don't know how he did that, but he did it. It was shown in an exhibit, according to this opinion. Offered the evidence. Let's see. Mr. Hassan identified Petitioner's Exhibit 5, which is a notice of cancellation. The date of mailing was October 30th. The notice was addressed at the Respondent's business address. The effective date of the cancellation was December 31st. Now, if they come up with that evidence, is that some evidence of receipt, or is it no evidence whatsoever? One, I don't think it's evidence of receipt. But I don't see that it's all important, because, as you've noted, we know there was no insurance. And this policy was going to expire at the end of the year. They gave the notice. The question is whether the corporation knew on the date of this man's injury that they had no insurance. That's the question. And that question is not answered by receipt of, as Justice Holdren said, pro forma cancellation notice. They knew it was going to be canceled. That's why they began the process. And they believed that they had completed the process, as they had with all the other insurance. So on December 31st, they thought, problem solved. We have all of our insurances in place. Let me see if I get this right. I get a notice from my insurance company that says, Hoffman, your insurance is canceled tomorrow morning. But I know that I talked to my insurance agent, and that isn't really true. Well, first of all, it's not. It's three months hence it will be canceled. But you already know that, and you've begun the process to renew the policy in anticipation of that. So, again, that shows that you are doing what you're supposed to, not knowingly going without insurance. Why would you go through that exercise? So if you — If I was to summarize, your client, if we want to say guilt, is guilty of anything as negligence as of that day. If anything was proven, it was that he wasn't mindful, which is neglect. So the final example I would have, in the State of Illinois, we have to have insurance to drive our cars. So if I get notice of cancellation, I guess I could take that defense when I go to court with a ticket of no insurance that I was in the process of — I thought I had insurance because I was in the process of renewing my policy. Except with the auto, it's either you do or you don't. It is strict liability, and it isn't an opposition of knowing or — I would suggest even in knowing, you'd have a problem in that context. But that's okay. What is his business that he was out searching for new insurance? New carrier. FCCI sent out its notices. They shop. Can I get a better price than FCCI for all of my insurance? And I don't think there's anything untoward. That's a general business concept, trying to get a better price, because insurance is expensive. So that's why you come up with all this information, so you can take it to the various carriers and they can price it. Well, that just shows — The only reason why I ask that is because the commission seemed to find the subsequent paragraph of Respondent's response stated that since its workers' compensation policy had not been renewed, Respondent had been diligently searching for a new carrier. Well, I think that that is a poor description of the testimony, that he actually began the process before it was actually canceled, knowing that this is what happens and knowing how long it takes. So he was diligent when he met with the broker, gave him the information that needed, came up with the projections, et cetera, for it to be shopped. Now, that's why you have a broker. Go out and do your thing. Now, I have a question. This may or may not be a record. But, okay, the broker represents the purchaser, not like an agent represents a company. We know all that. But this is bundled coverage placed normally with one carrier? That's traditionally how the company did it. That's the way they did it. Okay. Correct. Was there any evidence breaking down the cost of the individual coverages, general liability, profit and casualty, that sort of stuff? In the record, there was no discussion of that whatsoever. Okay. Because we know each one of the coverages would have a different premium. Right. But that was never even brought up. Yeah. Okay. But would that have been of some relevance to say, to show perhaps that broker's coverage is a minor expense compared to these other coverages? Well, it may be. But, once again, we don't believe that Galindo carried his burden. And if he doesn't prove his case, we're not required to prove it for him. He had the option of subpoenaing all that information in who the carrier was. He chose to present the case as you see it with Hassan as the only witness. And he lives with that. And the facts that he adduced do not establish knowing lack of insurance. And we would request that the panel reverse this decision. Thank you. Okay. Well, thank you, counsel, both, for your arguments in this interesting case. It will be taken under advisement. A written disposition shall be issued.